IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN REID-DOUGLAS,          :
            Plaintiff,          :          1:10-cv-2049
                                   :
      v.          :          Hon. John E. Jones III
                                     :
TIMOTHY J. HARDING, *et al.*,          :
            Defendants.          :

## MEMORANDUM

July 14, 2014

## I.     BACKGROUND

On October 5, 2010, Plaintiff, Steven Reid-Douglas, an inmate currently

confined at the State Correctional Institution Greene, in Waynesburg,

Pennsylvania, initiated this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

(Doc. 1).  Plaintiff filed an amended complaint on May 29, 2012.  (Doc. 67).  The

amended complaint alleges that the search of Plaintiff's cell on October 5, 2008

was unreasonable and violated his Fourth Amendment rights because it was not

conducted for the purpose of ensuring prison security, but rather to obtain evidence

to be used against him in his criminal trial on charges of attempted murder.  (*Id.*).

The amended complaint identifies the following Defendants: Timothy J.

Harding, a Lackawanna County Detective and member of the Federal Bureau of

Investigation ("FBI") Safe Street Task Force; Robert Maguire, a Lackawanna

County Security Threat Group Coordinator and member of the Lackawanna County Gang Task Force, who is also a corrections officer at the Lackawanna County Prison; Rochelle Kennedy, a Sergeant at the Lackawanna County Prison; and County correctional officers Donley, Zelinski,[1] Moskwa, Jr., Aloe, Locker, Cornall and Yavoroski[2]. (*Id.*).

On June 14, 2012, Defendant Harding, represented by the United States Attorney's Office, filed a motion to dismiss. (Docs. 69, 70). The motion was granted on September 5, 2013 and Defendant Harding was dismissed as a party to this action. (Doc. 96). This Court determined that Defendant Harding was entitled to qualified immunity as there was no clearly established Fourth Amendment right for pretrial detainees to be free from searches of their cells conducted for reasons unrelated to institutional security. (*Id.*). Plaintiff appealed the dismissal of Defendant Harding to the Third Circuit Court of Appeals. (Docs. 98, 99). On January 14, 2014, the appeal was dismissed for lack of jurisdiction, as the Order appealed was not a final order subject to appellate review. (Doc. 101).

On January 17, 2014, Defendants Maguire, Kennedy, Donley, Zelinski, Moskwa, Jr., Aloe, Locker, Cornall and Yavoroski, ("the Lackawanna County

---

[1] Incorrectly identified as Zelenskie in the amended complaint. *See* (Doc. 67).

[2] Incorrectly identified as Yarvoski in the amended complaint. *See* (Doc. 67).

Defendants"), filed the instant motion for summary judgment, supporting brief, statement of material facts, and exhibits. (Docs. 102-104). On June 18, 2014, Plaintiff filed a brief in opposition to the motion for summary judgment, a responsive statement of material facts, and exhibits. (Docs. 109-111). The motion is ripe for disposition and, for the reasons set forth below, will be granted.

## II.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 Fed. Appx. 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own

pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

## III.   ALLEGATIONS IN THE AMENDED COMPLAINT

The amended complaint (Doc. 67) alleges the following facts:

On June 23, 2008, a shooting occurred at the Mid Town Apartments in Scranton, Pennsylvania.  (Doc. 67, ¶ 3).  Defendant Harding was assigned to investigate the shooting.  (*Id.* at ¶ 4).  On August 25, 2008, Plaintiff learned through the news media that he was listed as "only" a person of interest in the shooting.  (*Id.* at ¶ 5).  Plaintiff voluntarily surrendered himself to County authorities.  (*Id.* at ¶ 6).  He was arraigned and formally charged with attempted murder, aggravated assault, and other alleged related criminal charges, and transferred to the Lackawanna County Prison to await his criminal trial.  (*Id.* at ¶¶ 7, 8, 12).

Plaintiff alleges that Defendant Maguire and Defendant Harding are

assigned to work on FBI's "Safe Street Task Force," which he describes as a unit that specializes in organized gang activities and violent crimes stemming from such activities.  (*Id.* at ¶¶ 10, 11).  He alleges that Defendant Maguire was acting in an "unauthorized contact" with Defendant Harding regarding Plaintiff's potential involvement in an alleged gang.  (*Id.* at ¶ 9).

On September 30, 2008, Plaintiff appeared for his preliminary hearing and was formally charged with attempted murder, aggravated assault, and related charges.  (*Id.* at ¶ 12).

Plaintiff alleges that, on or about October 5, 2008, Defendant Maguire instructed the Defendant correctional officers, who were working on the "3 to 11 shift", to conduct a thorough search of Plaintiff's cell before the end of Defendant Maguire's shift and indicated that this instruction was at the direction of Defendant Harding.  (*Id.* at ¶ 13).

Plaintiff makes the following allegations with regard to the search of his cell:

On October 5, 2008, the Defendant correctional officers approached Plaintiff's cell in the Restricted Housing Unit ("RHU") "for a search of so-called weapons."  (*Id.* at ¶ 14).  Plaintiff complied with the search, and was placed in restraints and escorted to a nearby picnic table where he sat with Defendant

Yavoroski while Defendant Kennedy and the other named correctional Defendants conducted the cell search.  (*Id.* at ¶ 15).  His request to watch the search was denied by Defendant Yavoroski, who questioned Plaintiff as to what contraband was in his cell and why he was in prison.  (*Id.* at ¶¶ 16, 17).  Plaintiff declined to discuss why he was in prison.  (*Id.* at ¶ 18).

Several minutes into the search, Defendant Kennedy exited Plaintiff's cell with a homemade shank and asked Plaintiff how he made it.  (*Id.* at ¶ 19).  Plaintiff denied that the shank was his, denied knowing how to make "such a thing," and stated that he did not know who it belonged to.  (*Id.* at ¶ 20).

Defendant Kennedy returned to Plaintiff's cell and quickly removed all of Plaintiff's personal belongings, including mail, pictures, clothing, linen (sheets and blankets), legal materials, personal and attorney letters, raps, poems, and personal hygiene articles, which were put in a clear plastic bag.  (*Id.* at ¶ 21).  Plaintiff questioned why his personal belongings were confiscated and Defendant Yavoroski responded that Plaintiff had "extra stuff."  (*Id.* at ¶¶ 22, 23).  Plaintiff was escorted back to his cell, and upon his return, he observed that the Defendant corrections officers "dumped all of the above-mentioned personal items onto the floor and hand-picked several items namely Plaintiff's paperwork, and mail [and] placed it in another clear plastic bag."  (*Id.* at ¶ 25).

Plaintiff then alleges that, on October 6, 2008, Defendant Maguire retrieved all paperwork that Defendant Kennedy placed in his mail box, which was associated with the search of Plaintiff's cell on the previous day. (*Id.* at ¶¶ 26, 27). He alleges that Defendant Maguire started reviewing these materials, including raps and notes written in song codes, that may have been related to Plaintiff's case. (*Id.* at ¶ 28). Defendant Maguire then, without discussing it with Plaintiff, assumed the materials were gang related and contacted Defendant Harding about the materials. (*Id.* at ¶ 29). Defendant Harding stated that he would obtain a search warrant for the items because they appeared to be "gang related." (*Id.* at ¶ 30). Plaintiff alleges that Defendant Harding subsequently served Defendant Maguire with a search warrant after the items were searched and seized. (*Id.* at ¶ 31).

On November 10, 2008, Plaintiff was charged with solicitation to commit murder pursuant to the items and documents that were allegedly illegally obtained in the October 5, 2008 cell search. (*Id.* at ¶ 32). He claims that the items obtained through the cell search were used at his criminal trial to support the charge of attempted murder against him, and that he ultimately was convicted of that charge. (*Id.* at ¶ 33).

Plaintiff alleges that Defendant Harding was aware of his "relation as a

potential member of a gang" and that Defendants Maguire, Kennedy, Zelenski, Aloe, Moskwa, Jr., Donley, Cornall, Locker, and Yavoroski acted together at Defendant Harding's request to conduct an illegal search of his cell. (*Id.* at ¶¶ 34, 35). Plaintiff alleges that none of the correctional Defendants were working in their official capacities as corrections officers, but instead as agents of the FBI's Safe Street Task Force. (*Id.* at ¶¶ 40, 41). He further alleges that the search of his cell was not conducted in the interest of prison safety, but, at the request of an outside law enforcement official (Defendant Harding) who was at the head of the investigation of the criminal charges pending against Plaintiff. (*Id.* at ¶ 42).

Plaintiff alleges that the search of his cell, while he was a pretrial detainee, was "unreasonable" and constitutes a direct violation of his constitutional rights in that it violated the Fourth Amendment prohibition against illegal searches and seizures. (*Id.* at ¶¶ 43-46, 56). He alleges the sole purpose of the search did not serve a legitimate penological interest and was to gather evidence against him for his upcoming trial, and Defendant Harding relied "primarily" on the information that was illegally obtained by Defendants Maguire, Kennedy, Yavoroski, Cornall, Locker, Aloe, Moskwa, Jr., and Donley during the trial. (*Id.* at ¶¶ 51-55, 57, 59). He claims that Judge Barrasse issued a search warrant on October 7, 2008 authorizing a search and seizure of all items and documents based upon the items

that were illegally obtained through the warrantless cell search that was conducted

on October 5, 2008 without the Judge's knowledge.  (*Id.* at ¶¶ 61-64).

As relief, Plaintiff requests compensatory damages, punitive damages,

declaratory judgment, costs, and other relief deemed appropriate by this Court.  (*Id.*

at p. 9).

## IV.   STATEMENT OF UNDISPUTED FACTS

Except where expressly noted as disputed, the following facts of record are

undisputed.

Plaintiff filed a complaint in this action on October 5, 2010, naming as

Defendants Timothy J. Harding, Robert Maguire, Sergeant Kennedy, and unnamed

County correctional officers.  (Doc. 103, ¶ 1; Doc. 110, ¶ 1).  The complaint

alleged that the Defendants violated his civil rights by conducting an unreasonable

search and seizure of his cell on October 5, 2008, while he was incarcerated at the

Lackawanna County Prison.  (*Id.*).  Plaintiff thereafter filed an amended complaint

on May 29, 2012 adding as Defendants the following correctional officers at the

Lackawanna County Prison: Zelenski, Donley, Moskwa, Jr., Aloe, Locker, Cornall

and Yavoroski.  (*Id.* at ¶ 2).

On October 3, 2008, Defendant Moskwa issued a misconduct report against

Plaintiff.  (Doc. 103, ¶ 4; Doc. 103, Ex. B; Doc. 110, ¶ 4; Doc. 111, Ex. 11).  The

misconduct report charged Plaintiff with threats, abusive language, insolence, creating a disturbance, and insulting language. (*Id.*). Plaintiff does not admit the charges in the misconduct report. (Doc. 110, ¶ 4).

On October 5, 2008, Defendant Zelenski completed an Incident Report stating that Plaintiff made threats against Defendant Moskwa. (Doc. 103, ¶ 5; Doc. 110, ¶ 5; Doc. 103, Ex. C; Doc. 111, Ex. 2).

It is disputed whether the Lackawanna County Defendants received an anonymous tip that Plaintiff had a weapon with the intention of injuring a correctional officer or staff member at the prison, which led to the search of Plaintiff's cell. (Doc. 103, ¶ 3; Doc. 110, ¶ 3). It is further disputed whether Defendant Zelinski told Defendant Yavoroski on October 5, 2008 that Plaintiff threatened Defendant Moskwa and may be in possession of a shank. (Doc. 103, ¶ 6; Doc. 110, ¶ 6).

It is undisputed that Plaintiff's cell was searched on October 5, 2008. (Doc. 103, ¶ 6; Doc. 110, ¶ 7). However, it is disputed whether a shank was found in Plaintiff's cell during the search. (Doc. 103, ¶ 6; Doc. 110, ¶¶ 7, 11).

An Incident Report was completed by Defendant Yavoroski on October 5, 2008. (Doc. 103, ¶ 7; Doc. 110, ¶ 8; Doc. 103, Ex. F). The Lackawanna County Defendants maintain that a shank was found during the cell search, which resulted

11

in Plaintiff's cell being stripped.  (Doc. 103, ¶ 7).  Plaintiff counters that his cell was stripped due to Defendant Harding's request for assistance in his criminal investigation.  (Doc. 110, ¶¶ 8-10).  He states that his cell was searched to gather gang-related evidence against him for his pending criminal trial.  (Doc. 110, ¶ 12).

## V.   DISCUSSION

### A.   *Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  This doctrine "provides not only a defense to liability, but 'immunity from suit.'"  *Milhouse v. Gee*, 2011 U.S. Dist. LEXIS 91749, *25 (M.D. Pa. 2011) (Rambo, J.) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  "[I]n reviewing a motion for summary judgment on the basis of qualified immunity, normal principles of summary judgment still apply, and any disputes of fact must be resolved in favor of the plaintiff."  *Estate of Smith v. Marasco*, 430 F.3d 140, 148 n.3 (3d Cir. 2005).

"[C]laims of qualified immunity are to be evaluated using a two-step process."  *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001) (citing *Saucier v.*

*Katz*, 533 U.S. 194 (2001)).  "First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation." *Bennett*, 274 F.3d at 136.  "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity."  *Id.*  The "court must dispose of the claim in the defendant's favor." *Milhouse*, 2011 U.S. Dist. LEXIS 91749 at *25 (citing *Saucier*, 533 U.S. at 201). Only once "it is determined that evidence of a constitutional violation has been adduced, [will] courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established."  *Bennett*, 274 F.3d at 136.  If the right was clearly established, "then a court must inquire as to 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Carvalho v. Bledsoe*, 2012 U.S. Dist. LEXIS 137937, *37 (M.D. Pa. 2012) (Conaboy, J.) (quoting *Saucier*, 533 U.S. at 201).

The Lackawanna County Defendants argue that summary judgment should be granted because they are entitled to qualified immunity, based on the assertion that they did not violate Plaintiff's constitutional rights with respect to the cell search and there was no clearly established law prohibiting their conduct on the date Plaintiff's cell was searched.  (Doc. 104, pp. 8-15).  Plaintiff responds that

there are genuine issues of material fact precluding summary judgment.  (Doc.

109).  He argues that he has alleged a Fourth Amendment violation and that the

Lackawanna County Defendants violated his constitutional rights by searching his

cell to assist law enforcement in the process of investigating him for solicitation to

commit murder, and that a confidential informant did not provide information to

the officers that there was a shank in his cell.  (Doc. 109, pp. 5-7).  Plaintiff further

argues that the Lackawanna County Defendants are not entitled to qualified

immunity simply because Defendant Harding was entitled to qualified immunity.

(Doc. 109, pp. 7-10).  Plaintiff states that the Lackawanna County Defendants'

position that they did not search Plaintiff's cell to assist Defendant Harding is in

direct contradiction with their argument that they should be entitled to qualified

immunity because Defendant Harding received qualified immunity.  (Doc. 109, pp.

7-10).  These arguments will be addressed in turn.

      *B.*    *Cell Search*

      The Lackawanna County Defendants argue that Plaintiff's cell was searched

based on an anonymous tip that Plaintiff was hiding a shank in his cell and he

intended to use it on Defendant Moskwa.  (Doc. 104, p. 11).  The Lackawanna

County Defendants therefore argue that they are entitled to summary judgment

consistent with the holding in *Hudson v. Palmer*, 468 U.S. 517 (1984).  In *Hudson*,

the United States Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." 468 U.S. at 526.

Plaintiff argues that *Hudson* does not apply to his case because he was a pretrial detainee and *Hudson* considered a cell search challenged by a convicted inmate. (Doc. 109, p. 6); *Hudson*, 468 U.S. at 522. Plaintiff instead relies on *Bell v. Wolfish*, 441 U.S. 520 (1979), and argues that the search of his cell was unreasonable and not based on promoting the safety and security of the institution. (Doc. 109, pp. 6-7). However, Plaintiff's reliance on *Bell* is misplaced.

In *Bell*, the Supreme Court addressed the constitutionality of cell searches that inmates were not permitted to observe, and strip searches following contact visits. *Bell*, 441 U.S. 520. The Court upheld both searches as reasonable under the Fourth Amendment. *Bell*, 441 U.S. at 557-58. As a preliminary matter, the Court assumed without deciding that both convicted prisoners and pretrial detainees retain some Fourth Amendment rights upon commitment to a correctional facility. *Bell*, 441 U.S. at 558. The Court then stated that "room searches represent an appropriate security measure." *Bell*, 441 U.S. at 557. The Court further stated that

inmates do not have a Fourth Amendment right to be free from strip searches, which can be conducted by prison officials without probable cause provided that the search is conducted in a reasonable manner.  *Bell*, 441 U.S. 520; *Wilson v. Shannon*, 982 F. Supp. 337 (E.D. Pa. 1997).  The reasonableness of inmate searches is determined by balancing "the need for the particular search against the invasion of the personal rights that the search entails."  *Bell*, 441 U.S. at 559. "Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547.

In *Block v. Rutherford*, 468 U.S. 576 (1984), the United States Supreme Court considered a cell search challenged by pretrial detainees and upheld *Bell*'s conclusion that prison cell searches in the absence of detainees did not violate pretrial detainees' presumed Fourth Amendment rights.  *Block*, 468 U.S. at 586. *See also Kelly v. Kemp*, 2011 U.S. Dist. LEXIS 142819 (M.D. Pa. 2011) (Carlson, M.J.), *adopted by*, 2011 U.S. Dist. LEXIS 138086 (M.D. Pa. 2011) (Conner, J.) (concluding that the plaintiff, a pretrial detainee, had no privacy right in his prison cell and no constitutional right to be present during the officers' searches of his cell).

Upon review of the affidavits and interrogatories of record, this Court determines that there is a dispute as to what prompted the cell search. *See* (Doc. 103, Ex. A; Doc. 111, Exs. 1, 3, 4, 5, 6, 7, 10). At the summary judgment stage, any disputes must be resolved in Plaintiff's favor, as the nonmoving party.[3] This Court previously determined that Plaintiff stated a successful Fourth Amendment claim where he alleged that the search of his cell was not initiated by prison officials for purposes of preserving institutional security, but at the direction of outside law enforcement to further a criminal investigation. *See* (Doc. 96). Accordingly, the Court will not reconsider this issue.

C.    *Clearly established rights at the time of the cell search*

As determined in this Court's previous Memorandum of September 5, 2013, Plaintiff has alleged a Fourth Amendment violation satisfying the first step in the qualified immunity analysis. (Doc. 96). Once it is determined that the plaintiff established a constitutional violation, the court must next determine whether that

---

[3] If this Court determined that the cell search was conducted based on an anonymous tip that there was a shank in Plaintiff's cell, there would be no constitutional violation and the Lackawanna County Defendants would be entitled to qualified immunity. *See United States v. Cohen*, 796 F.2d 20, 24 (2d Cir. 1986) (stating that if the cell search had been initiated by a prison official, "established decisional law holds that the search would not be subject to constitutional challenge, regardless of whether security needs could justify it"). However, deciding this issue in favor of Plaintiff, as the nonmoving party, the search was in fact a constitutional violation. But, the constitutional right was not clearly established at the time of the cell search and the Lackawanna County Defendants would nevertheless be entitled to qualified immunity.

constitutional right was clearly established at the time of Plaintiff's cell search. *Saucier*, 533 U.S. 194.

"'[C]learly established rights' are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001). "[T]here must be sufficient precedent at the time of action...to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *Id.* at 572.

This Court determined in its September 5, 2013 Memorandum that Defendant Harding was entitled to qualified immunity as the law prohibiting cell searches conducted for reasons unrelated to institutional security was not clearly established at the time of Plaintiff's cell search. This Court stated that "there was no sufficient precedent at the time of the search to put Defendant Harding on notice that his conduct was constitutionally prohibited" and, given the established law and the information available to Defendant Harding, a reasonable officer in his position could have believed that his conduct was lawful. (Doc. 96, p. 27).

The Lackawanna County Defendants set forth the same argument as Defendant Harding, namely, that they are entitled to qualified immunity because at the time Plaintiff's cell was searched there was no clearly established Fourth Amendment right for pretrial detainees against searches of their cells conducted for

reasons other than institutional security. *Compare* (Doc. 104, pp. 12-15) *with* (Doc. 70, pp. 18-20, 28-31).

This Court previously noted that the applicability of the holding in *Hudson* to pretrial detainees who assert a Fourth Amendment violation based upon searches of their prison cells that allegedly are directed by outside law enforcement officials to gather evidence against them, rather than by prison officials to protect prison security, is unclear within this Circuit. (Doc. 96). This Court examined relevant caselaw as follows:

> In two recent cases, our sister courts within the Third Circuit also have cited the holding in *Hudson* that the Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell in rejecting Fourth Amendment challenges to cell searches by pre-trial detainees where the detainees were alleging that the searches were directed to gather evidence against them in pending criminal proceedings. *See United States v. Robert Colbert*, Crim. No. 08-411, 2011 WL 3360112 (W.D. Pa. Aug. 3, 2011) (denying motion to suppress physical evidence seized from pre-trial detainees' jail cells); *Tinsley v. Giorla*, Civil Action No. 05-2777, 2008 WL 901697, at *10 n.3 (E.D. Pa. Apr. 1, 2008) (granting summary judgment in favor of defendants as to pre-trial detainee plaintiff's claim that legal papers improperly were seized from his cell). Nevertheless, in at least one other instance, one of our sister courts applied the reasoning in *Cohen* to a pre-trial detainee's challenge through a motion to suppress the evidence seized from his cell where he alleged that the search was conducted by outside authorities, namely United States Postal authorities, rather than by corrections officers, and thus was conducted for non-institutional security related reasons, namely to gather evidence against him in an ongoing criminal investigation. *United States v. Jack and Charles Colbert*, Crim. No. 89-310, 1990 WL 5200, at *3 (D.N.J. Jan. 23, 1990). While the United States

District Court for the District of New Jersey ultimately denied the motion to suppress in *Colbert* based upon its finding that the record established that the search was in fact initiated by a prison official, rather than by outside law enforcement, and was conducted for valid institutional reasons, it is significant that the Court acknowledged that, based upon the reasoning in *Cohen*, its inquiry was not limited to the holding in *Hudson* where there was an allegation by a pre-trial detainee that a search was initiated by outside authorities for the purpose of gathering evidence to bolster criminal charges against him. *See id.*

(Doc. 96, pp. 24-25) (citing Doc. 25, pp. 17-18).

Additionally, in *Mitchell v. Turgeon*, the Middle District of Pennsylvania Court stated that a pretrial detainee did not have an expectation of privacy in legal documents that were allegedly seized pursuant to the direction of a Judge of the Dauphin County Court of Common Pleas. (Doc. 96, p. 25) (citing *Mitchell v. Turgeon*, 2012 U.S. Dist. LEXIS 22002 (M.D. Pa. 2012) (Blewitt, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 21996 (M.D. Pa. 2012) (Kane, J.)).

It was therefore determined that Defendant Harding was entitled to qualified immunity because there was no clearly established law prohibiting his conduct at the time of the search to put him on notice that his conduct was constitutionally prohibited. (Doc. 96, pp. 22-27). This Court further stated:

Despite our previous finding in favor of pre-trial detainees having a Fourth Amendment right to be free from unreasonable searches done not for purposes of institutional security, but for the purpose of furthering an outside criminal investigation, we still need to consider whether that right was clearly established at the time of the violation

20

as Defendant Harding is raising a qualified immunity argument for the first time.  We simply cannot ignore the divide in our Circuit regarding this issue.  The search of Reid-Douglas' cell took place on October 5, 2008.  Considering the *Cohen* decision, the *Hudson* decision, and the various cases decided in our Circuit discussed above, we find that there was no sufficient precedent at the time of the search to put Defendant Harding on notice that his conduct was constitutionally prohibited.  Further, given the established law and the information available to Defendant Harding, *i.e. Hudson*, 468 U.S. 517, a reasonable officer in Defendant Harding's position could have believed that his conduct was lawful.  Accordingly, we will grant Defendant Harding's motion to dismiss on the basis of qualified immunity.

(Doc. 96, pp. 26-27).

As stated above, it is disputed whether the Lackawanna County Defendants searched Plaintiff's cell based on an anonymous tip that there was a shank in Plaintiff's cell, or at the direction of an outside law enforcement official (Defendant Harding) to gather evidence against him in a pending criminal investigation.  Assuming *arguendo* that the search was conducted at the direction of Defendant Harding to assist in his criminal investigation, this Court previously determined that there was no sufficient precedent at the time of the search to put Defendant Harding on notice that his conduct was constitutionally prohibited. Similarly, the Lackawanna County Defendants are entitled to qualified immunity because, at the time Plaintiff's cell was searched, the law prohibiting cell searches conducted for reasons unrelated to institutional security was not clearly

established; thus, there was no clearly established law prohibiting their conduct. *See Saucier*, 533 U.S. at 202 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."). Reasonable officers in the same position could have believed that their conduct was lawful.

As this issue has previously been decided by this Court, we are bound by that decision. The law of the case doctrine directs courts to "refrain from re-deciding issues that were resolved earlier in the litigation" and has been "developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) (citation omitted). The law of the case doctrine is a discretionary rule and it does not apply in "extraordinary circumstances." *Schneyder v. Smith*, 653 F.3d 313, 331-32 (3d Cir. 2011). Such situations include when: "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.* There are no extraordinary circumstances warranting this Court to reconsider its previous finding that the law prohibiting cell searches conducted for reasons unrelated to institutional security was not clearly established

at the time of Plaintiff's cell search.  Neither party has cited to any new law and a cursory search has found nothing that would alter this Court's previous decision. *See Block,* 468 U.S. 576*; Mitchell v. Turgeon*, 2012 U.S. Dist. LEXIS 22002 (M.D. Pa. 2012) (Blewitt, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 21996 (M.D. Pa. 2012) (Kane, J.); *Kelly v. Kemp*, 2011 U.S. Dist. LEXIS 142819 (M.D. Pa. 2011) (Carlson, M.J.), *adopted by*, 2011 U.S. Dist. LEXIS 138086 (M.D. Pa. 2011); *Allison v. GEO Group, Inc.*, 611 F. Supp. 2d 433 (E.D. Pa. 2009). Accordingly, this Court is bound by its previous decision.

## VI.   CONCLUSION

Based on the foregoing, the Lackawanna County Defendants' motion for summary judgment will be granted.  A separate Order follows.